STATE OF MISSOURI ex rel. SILAS RIPPEE, J. W. KIRK and ISAAC STRONG, Appellants, v. J. M. FOREST, W. S. CANDLER, and D. CLAXTON, Judges of the County Court of Wright County, Missouri, and E. G. PURTLE, Clerk of the County Court of Wright County, Missouri, Respondents.

Springfield Court of Appeals, January 19, 1914.

1. ANIMALS: Restraining from Running at Large: Statutory Provisions: Requirements. Sec. 787, R. S. 1909, provides that any one or more townships which adjoin a body of five or more adjacent townships which have adopted laws restraining certain animals from running at large under Sec. 784, R. S. 1909, may petition the county court to submit to the voters of such one or more townships the question of restraining such animals from running at large therein. It is essential that the proceedings show that the animals sought to be restrained are of the same species as those which are restrained in the five adjacent townships.

2. CERTIORARI: Presents What Before Superior Court. The office of the writ of *certiorari* is to bring up the record of the inferior court and to determine whether or not it has acted within its jurisdiction.

3. COUNTY COURTS: Jurisdiction Limited: Court's Record Must Show Jurisdiction: Otherwise Action a Nullity. A county court is an inferior court of limited jurisdiction and its jurisdiction to call and hold an election to determine whether or not domestic animals shall be restrained from running at large must

affirmatively appear by some part of the record of its proceedings or its action must be annulled when the validity of its proceedings is attacked by direct proceeding.

4. **STATUTES: Kindred Statutes: Construed Together.** A statute whose purpose is the restraining of certain animals from running at large should be read and construed with other statutes *in pari materia*.

5. ————: **Construction: Legislative Intent: How Determined.** The legislative intent is the cardinal rule of the construction of statutes; and the history of the legislative enactment, the changes it has undergone and the remedy it was intended to afford are important in arriving at the legislative intent.

6. ————: ————: **Should be Reasonable.** Statutes should always be given a reasonable construction and one leading to an unreasonable or absurd result should be avoided.

7. **ANIMALS: Restraining from Running at Large: Statutes Reviewed.** History of statutory legislation concerning the restraining of certain animals from running at large reviewed and the surroundings and conditions calling for the enactments considered.

Appeal from Wright County Circuit Court.—*Hon. C. H. Skinker,* Judge.

REVERSED AND REMANDED *(with directions).*

*F. M. Mansfield* and *Argus Cox* for appellants.

(1) Unless five townships in Webster county which were joined by Pleasant Valley and Gasconade in Wright county had previously adopted the law restraining the same animals sought to be restrained in this election and this election and a proper petition had been presented to the county court, that court had no jurisdiction to call an election at all. Constitution of Missouri, art. VI., sec. 36; R. S. 1909, sec. 787; Jefferson County v. Cowan, 54 Mo. 234; Whitely v. Platte County, 73 Mo. 30; Owens v. County Court, 49 Mo. 372. (2) The county court being an inferior court of limited powers and not proceeding according to the common law, its jurisdiction to do the particular thing

it attempted to do must affirmatively appear by some part of the record of its proceeding or its action will be annulled when the validity of its proceedings are attacked in a direct proceeding as is done in this case. State ex rel. v. Duncan, 150 Mo. App. 403; State v. Heege, 37 Mo. App. 348; State ex rel. Harrah v. Cauthorn, 40 Mo. App. 94; State ex rel. v. City of Neosho, 57 Mo. App. 192; Jefferson County v. Cowan, 54 Mo. 234; Whitely v. Platte, 73 Mo. 30; Zimmerman v. Snowden, 88 Mo. 218; Owens v. County Court, 49 Mo. 372; State v. Police Commissioners, 14 App. 310; Gibson v. Vaughan, 61 Mo. 418; Ells v. Railroad, 51 Mo. 200; State ex rel. v. Page, 107 Mo. App. 213; State ex rel. v. Ford, 107 Mo. App. 328; Spurlock v. Doran, 182 Mo. 242. (3) The county court could not order an election in two townships joining a body of five townships to vote on restraining any animals that had not been previously restrained by the five townships. R. S. 1909, sec. 787; Bingham v. Birmingham, 103 Mo. 351-352; State v. Bulling, 100 Mo. 87; Verdin v. St. Louis, 131 Mo. 163; State v. Brown, 206 Mo. 507; Perry v. Strawbridge, 209 Mo. 636-646; State v. Fawcett, 212 Mo. 736-737; Rutter v. Carothers, 223 Mo. 642-643; State ex rel. v. Trustees, 234 Mo. 312-319; Keeney v. McVoy, 206 Mo. 65-68; Corrigan v. Kansas City, 211 Mo. 650; Boyd v. Railroad, 249 Mo. 124. (4) The court did not find that any five townships in Webster county had adopted the law restraining any animals from running at large. A finding that five townships had adopted the law restraining horses, mules, asses, goats, cattle, swine and sheep or at least two of the classes from running at large finds nothing. R. S. 1909, sec. 787; 1 Black on Judgments, p. 183; State v. Grossman, 214 Mo. 243-244; State v. Modlin, 197 Mo. 376; State v. Jones, 114 Mo. App. 346-347; State v. Holland, 162 Mo. App. 681-682; McElroy v. State (Tex.), 45 S. W. 359.

*Perry T. Allen* and *Jackson & Jackson* for respondents.

· (1)  The writ of *certiorari* only brings up the record and such matters only as appear on the face of the records which go to the jurisdiction of the tribunal to which the writ is directed can be reviewed by such writ.  The evidence not being a part of the record, is not subject to review in a hearing on a writ of *certiorari.*  State ex rel. v. Wooten, 139 Mo. App. 231. (2)  Statutes which confer or extend the elective franchise, are remedial and to be liberally construed. Where the intent is plain to confer a privilege upon those whose rights are to be affected by a statute in derogation of private property and the language is doubtful as to the extent of the privilege, it is the duty of the courts to give it the largest construction in favor of the privilege which the language employed will fairly permit.  2 Sutherland Statutory Construction (2 Ed.), sec. 680

STURGIS, J.—This is a proceeding by certiorari having for its object the annulment of the proceedings had in the county court of Wright county in connection with an election held in two townships of said county relative to the adoption and enforcement in such townships of the law restraining domestic animals from running at large.  This election was held under the provisions of section 787, Revised Statutes 1909, which is as follows: "Whenever any five or more townships in one body in any county in the State of Missouri have heretofore adopted the laws governing the question of restraining horses, mules, cattle, asses, goats, swine and sheep, or any two or more of the above named classes of animals, as provided in this article, then any one or more townships that have not adopted said law and that are adjoining said five or more townships in the same or an ad-

joining county, by a petition of twenty-five house-holders of each township desiring to adopt said law, petition the county court for the privilege to vote on the question of restraining horses, mules, asses, cattle, goats, swine and sheep, or any two or more of the above named classes of animals, from running at large, the same laws governing counties are hereby applied to said township or townships, and said petitioners shall not be debarred the right to restrain said animals if a majority of the qualified voters, voting on the question of restraining said animals, at any regular or special election in said township or townships, vote in favor of restraining said animals.''

The law here referred to, section 772, Revised Statutes 1909, makes it unlawful for the owner of any of the kinds of domestic animals enumerated therein to permit the same to run at large outside of the owner's inclosure. It is further provided by section 779, Revised Statutes 1909, that such law shall be suspended in the several counties of the State until adopted by a majority vote at a general or special election. It is then provided by the next section how such election may be called and, among other things, requires the petitioners for the election to designate which and how many of the species of domestic animals they desire to have so restrained and the result of the election affects only the animals so designated. The law primarily applies to counties as the unit and its adoption by the county has the effect of restraining from running at large the kind or kinds of animals voted on coextensive with the county. There is a special provision, however, section 784, providing for any five townships in one body in any county becoming the unit for the purpose of voting on and adopting such law and making the same law governing counties apply to such townships, so that five townships in a body may restrain any one or more of the various species of domes-

tic animals. Section 787, supra, is evidently designed as a means of enlarging this territorial unit.

The question of most importance for decision here, and the one which disposes of this case, is whether in enlarging the territory, originally of not less than five townships, by the addition of adjacent townships thus preserving the unity of the territory, the unity of the species of animals to be restrained throughout the enlarged territory must not also be preserved. This question arises in this way: The election in question had for its object the enlargement of the territorial unit of five townships in the adjacent county of Webster, which had previously adopted this law as to some or all (we are not able to tell which) such species of domestic animals, by adding thereto two townships in Wright county adjoining the same. The substance of the order of the county court of Wright county calling this election for these two townships is shown by the following extract therefrom, to-wit: " . . . and it appearing to the satisfaction of the court that more than twenty-five resident householders of each of said townships, to-wit: Gasconade and Pleasant Valley townships . . . have signed said petition and that said petitioners reside and live in townships in Wright county, Missouri, adjoining the five townships in one body in Webster county, Missouri, which have heretofore adopted the law governing the question of restraining horses, mules, cattle, asses, goats, swine and sheep from running at large *or at least two of the above named classes of animals* and that the law governing such case has been fully complied with as appears from the petition filed and the evidence heard. It is therefore adjudged and ordered by the court that the question of restraining horses, mules, cattle, asses, goats, swine and sheep from running at large in the townships of Gasconade and Pleasant Valley in Wright county, Missouri, be submitted to the voters of said townships for their approval or rejection. . . ."

The petition asking the election to be called in these two townships likewise contains the allegation that, "five townships in one body in the county of Webster in the State of Missouri, have heretofore adopted the law governing the question of restraining horses, mules, cattle, asses, goats, swine and sheep, *or at least two of the above named classes of animals,* as provided in article 5 of chapter 6 of the Revised Statutes of Missouri, 1909, from running at large."

It is apparent that the record of the county court nowhere shows and no finding was made by it as to which or how many of the kinds of domestic animals designated by the statute and this order were being restrained by law adopted in the five townships in Webster county constituting the territorial unit to be thus enlarged. The only finding is that *all* such animals are there restrained *or at least two* of such species are so restrained in such five townships. It may well be questioned whether such a finding in the alternative amounts to any finding at all and is a sufficient basis for any order calling an election. [State v. Grossman, 214 Mo. 233, 243, 113 S. W. 1074.] The order made and the election held in these two additional townships, if valid, puts in force the law restraining all the seven species of domestic animals mentioned in the statute from running at large therein. For aught that is shown by the record of the county court only sheep and swine, or some other two classes of domestic animals, were so restrained in the five townships constituting the original unit, while in this added territory all kinds of domestic animals must be restrained. Moreover, if defendants' construction of the law is permissible, then it might well be that if five townships adopt the law as to sheep and swine, for instance, then an adjacent township might adopt the same as to horses and cattle only, and still another adjacent township as to asses and mules only.

If such construction of the statute is not permissible and if, in enlarging the territory covered by the law restraining any of the species of domestic animals, the species of animals to be restrained must be kept uniform throughout the whole territory, or at least not enlarged in the additional territory, then the proceedings calling and holding the election in question must be held void. The office of the writ of *certiorari* is to bring up the record of such inferior tribunals, as county courts, and to determine whether or not such inferior court has acted within its jurisdiction. [State ex rel. v. Ross et al., decided at this term, and cases there cited.] The county court, being an inferior court of limited powers and not proceeding according to the common law, its jurisdiction to call and hold this election must affirmatively appear by some part of the record of its proceedings or its action must be annulled when the validity of its proceedings is attacked in a direct proceeding, as is done in this case. [State ex rel. v. Duncan, 150 Mo. App. 403, 411, 130 S. W. 496; State ex rel. v. Heege, 37 Mo. App. 338, 348; State ex rel. Harrah v. Cauthorn, 40 Mo. App. 94, 97; State ex rel. v. City of Neosho, 57 Mo. App. 192, 198; Jefferson County v. Cowan et al., 54 Mo. 234; Zimmerman v. Snowden, 88 Mo. 218; State ex rel. v. Page, 107 Mo. App. 213, 216, 80 S. W. 912; State ex rel. v. Fort, 107 Mo. App. 328, 333, 81 S. W. 476; Spurlock v. Dornan, 182 Mo. 242, 251, 81 S. W. 412.]

The statute in question is not so definite and certain in this particular as not to call for a construction by the courts. It must be read and construed with other sections *in pari materia*. The legislative intent becomes the cardinal rule of construction. In arriving at such intent the history of such legislative enactment, its changes from time to time and the remedy it was intended to afford become important. Laws should always be given a reasonable construction and any construction leading to an unreasonable or absurd

result should be avoided. The surroundings and conditions calling for the enactment are also to be considered. These principles are firmly imbedded in our jurisprudence. [Rutter v. Carothers, 223 Mo. 631, 642, 122 S. W. 1056; State ex rel. v. Trustees of William Jewell College, 234 Mo. 229, 312, 320, 136 S. W. 397; Keeney v. McVoy, 206 Mo. 42, 65, 103 S. W. 946; Corrigan v. Kansas City, 211 Mo. 608, 650, 111 S. W. 115; Boyd v. Railroad, 249 Mo. 110, 129, 155 S. W. 13.]

Turning to the history of the legislation on this question, we find that in 1883, Acts of 1883, p. 27, a law was enacted permitting the county only as a unit to vote on this question. In 1885, Acts of 1885, p. 29, a new section was added, whereby five or more townships in a body were permitted to vote on restraining swine and sheep only. This is still the law as to townships adjacent to navigable streams (section 785, Revised Statutes 1909). In 1887, Acts of 1887, p. 21, one or more townships adjoining any five that had previously adopted the law restraining swine and sheep could vote as to restraining swine and sheep, that is, enlarge the territory as to restraining these two kinds of animals. In 1893, Acts of 1893, p. 29, the statute was so amended as to give the right to vote on restraining all seven of the classes of domestic animals or any two or more of such classes to a body of five townships, the same as to counties. The law was not changed, however, as to adjoining townships and from 1893 until 1907 one or more townships adjoining the five could only vote on restraining swine and sheep, which were already restrained in the original five townships, even though the five townships had voted to restrain all classes of domestic animals. In 1907 Acts of 1907, p. 66, the law as to townships adjoining a body of five townships which had already adopted this law was so amended as to give the right to such adjacent townships to adopt the law restrain-

ing all the species of domestic animals when the five townships had adopted the law as to all such classes. This made the law uniform throughout the enlarged territory. In 1909, Acts of 1909, p. 120, this law was again amended, becoming section 787, supra.

Common knowledge tells us, and the course of legislation on this subject clearly indicates, that the inconveniences and expense of restraining domestic animals within the inclosure of the owner, especially in the more thinly settled portions of the State, is such that it is only when a considerable area of territory desires such restriction as to any class of such animals that the same will be permitted. The county was first the smallest unit; later, five townships. It is also common knowledge that one reason for this is that there is always "war on the border," caused by animals from the free territory straying into the protected territory where they may be impounded and penalties imposed. The course of legislation on this subject also clearly evinces a purpose not to allow one or more townships adjoining the five-township unit to restrain more or different species of animals than applied to the original unit. To do so would not enlarge the original territory but would create a much smaller adjacent territory as a distinct unit with entirely different and conflicting restrictions—a thing which is contrary to the purpose and spirit of the act. This objection does not lie where the additional townships restrain a smaller number of species as no additional burdens are placed on such original townships.

Again, one or two townships cannot adopt this law to any extent until a body of five townships which they adjoin have adopted it as to one or more classes of animals. Suppose five townships adopt the law as to sheep and swine only. If the law then permits one or two adjacent townships to adopt it as to horses and mules only, there would be nothing in common and they would constitute different territorial units

with different restrictions. Why, then, should they join each other? Why, also, should it be required that the vote be taken in the five townships on one proposition before voting in the adjacent townships on an entirely different proposition? If a single township is to be allowed to restrain horses and mules, then why require as a condition precedent that five other adjacent townships restrain their hogs? We think the courts ought not to adopt such an unreasonable construction of the law and one that would defeat its obvious purpose. It will be noted that section 787, supra, in speaking of townships adjoining the nucleus of five already having adopted the law as to all or part of the animals named, speaks of such additional townships adopting *said* law and of restraining *said* animals thereby, we think, referring to the law as adopted in the five townships and to the animals therein restrained and does not permit any enlargement of the law as there adopted.

If the five townships in Webster county, which adjoin the townships in Wright county voting on this proposition, had in fact adopted the law in question as to all domestic animals, as these adjacent townships sought to do, we are not so advised and the petitioners for the election and the county court in making its order are unfortunate in not so stating and finding. In this proceeding we are compelled to take the record as we find it. It results that this cause is reversed and remanded with directions to the trial court to enter judgment quashing and annulling the proceedings of the county court as to the election in question.

*Robertson, P. J.,* concurs. *Farrington, J.,* concurs.